Rueexn, Judge,
 

 The question is, what is the proper
 
 county
 
 within the act of
 
 1777, {-Rev. c.
 
 1X5,
 
 s.
 
 19>) to which the
 
 ca. sa.
 
 shall issue before charging the bail.
 

 In England, it is the county in which the
 
 venue
 
 was laid.
 
 (Dudlow
 
 v.
 
 Watchoru,
 
 16 East 39). Andas that in transitory actions is at the election of the plaintiff, and need not be that in which the defendant lives, or was arrested, it seems, as
 
 Mr Tidd
 
 remarks, that tiie
 
 ca. sa.
 
 is not intended there actually to cause an arrest of the principal, but rather to intimate to the bail, to what species of execution the creditor means to resort. The purpose • is not so much to take the body on tiie writ, as to let the hail know that lie must render the body. ’ Hence it is only necessary to take effectual means of giving that notice which is held to be by depositing the writ in some certain sheriff's office, to which the bail can have recourse for enquiry ; and that in which the action was laid, has been the one selected in all cases.
 

 We think however, that our legislature meant that and something move, in our statute, and that theca sa. is required as well for the benefit of the bail as the plaintiff-
 
 *249
 
 The
 
 ca. sa.
 
 ought to be issued to the county,' where it may be executed by the actual arrest of the defendant, if that can be done ; and if that cannot be done, then to the county in which it will most probably gire notice to the bail. For the words are not 4 • in
 
 the
 
 proper-county” but
 
 “•
 
 if the defendant cannot be found in
 
 his
 
 proper county.” This is
 
 prima fade
 
 the county, in. which the defen-, dant was originally arrested; because his residence must be taken to hare then been there ; because it is presumed the bail reside there, and will get notice by the writ; because the plaintiff is not to be charged, at his peril, with the duty of taking notice of the defendant’s change of.residence ; and because, in case the defendant leaves the state, or has no-fixed residence ire another county in the state, there is no other certain place, to which the defendant can send his execution; and the law surely intended to' give some certain one. This we take to be the principal point decided in
 
 Benton
 
 v.
 
 Duffy, (Conf. Rep.
 
 98) which is believed to have been followed ever since. But as I have before said, the execution required, in our act was intended to be an effectual one. If sent into the county where the
 
 capias ad respondendum
 
 was served, it would not have that character, in case the defendant had in fact removed from it. In that event,, it ought to go to the county where lie then resides, provided the plaintiff has knowledge of it. There is no reason for obliging the plaintiff to knpw where the defendant lives. He has a right to presume, as against the bail, that his original county is yet his proper county, until it he shown that lie knows the contrary, or had rea-, son to know it. Upon this point therefore, the court now differs from
 
 Benton
 
 v.
 
 Duffy,
 
 if in that case the demurrer to the rejoinder was sustained. Tiie report is obscure, and it does not appear, what judgment .was directed to be given-; nor do I understand what is meant in the latter part of the opinion, where it is said, that the county of the arrest ought not to be departed from, unless a return of the sheriff evinces, that such county no longer continues to be his proper county. • It is clear, however, in the admission, that the original county is to
 
 *250
 
 be departed from, where it satisfactorily appears that it no longer continues to be the defendant’s proper county. And I do not know, bow that could be more conclusively cstablislied than by a plea, that at the time of issuing the
 
 ca. sa.
 
 to one county, the principal resided in another county, and the plaintiff knew it; and an admission thereof by a general demurrer. We think in that case, that the county of the defendant’s present residence is “
 
 Ms
 
 propei1 county,” and in that respect concur with the judge of the Superior Court.
 

 
 *249
 
 If the defendant has no fixed residence in the slate, then the
 
 i:u. sn.
 
 ought to. issue to the coun. ty, where the bail bond was taken, that the bail may have notice.
 

 But if the defendant has acquired a domicil' in another county, and the plaintiff has notice of it, the 67».
 
 sa.
 
 ought to issue to that county..
 

 
 *250
 
 A temporary residence by a single man with- ' out property is not such a change of domi-cil as justifies the plaintiff, in order to charge the bail, in issuing the
 
 ca. sa.
 
 to any other, county than that in which the original writ was executed.
 

 But wo think that court erred in saying, that Lincoln was, or could be found by the jury upon the evidence, to be the proper county of
 
 Newton.
 
 The plea is, that there was no
 
 ca. sa.
 
 to Buncombe, in which
 
 Newton
 
 was first-arrested. The replication is, that there was a
 
 ca. sa. to
 
 Lincoln, which v as the domicil of Newton; and on this last point, to wit, the domicil and residence, the rejoinder takes issue. The evidence does not establish any thing like a domicil. On the contrary it proves, that Lincoln was not
 
 Newton’s
 
 place of residence — home. Hehad, in truth, no place of residence in North Carolina, certainly not in Lincoln. Without house, land, family, he wandered about the country, seeking employment
 
 de die in diem
 
 ; and only stayed three weeks in Lincoln for the temporary purpose of plastering a house. What rights as a citizen was he entitled to, or to what duties was he subject in that county ? He could not vote
 
 ; he
 
 was not liable to military duty, nor bound
 
 to
 
 repair the highways. He sojourned there, but did not reside there. It was not
 
 his
 
 county, and his stopping in that county was no more to the purposes of residence, than boarding for a week, or putting up a tavern.for a night. He did not
 
 dwell
 
 there, nor did he purpose so to do. The judge of the Superior Court seems to have thought, that the abandonment of Buncombe by
 
 Newton,
 
 and going into another county for any purpose, makes the former cease to be the proper county. Clearly not. It is not alone that he leaves
 
 Buncombe;
 
 for if lie went out of the state, then there would be no proper county
 
 ;
 
 nor that he goes into another, which makes the latter his proper county.
 
 *251
 
 For lie must go there to inhabit anti dwell, either for an indefinite period, and for the general purposes of livelihood, or if for a definite time, through the seasons of the year, as an overseer or the like. But a mere casual employment in a job of a few weeks will not give him a do-micil there, although he may not have one elsewhere. He is a citizen of the world — a mere bird of passage; not an inhabitant.
 

 This is not like the case of one- having no fixed residence, dying at a particular place, as to the purposes of administration and distribution. There., the place of death ‘must be taken, because there is no other. Here, the converse is true. The accidental and occasional place of being is not taken because there is another certain place, namely, the county where the writ was served ; which continues to be
 
 “
 
 his proper county,” until some other is adopted as a fixed residence.
 

 Per Curiam. — Judgment reversed.